U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JAN 1 4 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LATONJA DAVIS, et al. | CIVIL ACTION NO. 1:06-CV-1266 |
| -vs- | JUDGE DRELL |
| CITY OF BUNKIE, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is the Defendants' motion for summary judgment (Doc. 43), filed jointly by remaining Defendants, City of Bunkie, Police Chief Mary Fanara, and Mayor Gerard Moreau. Fred Armstead is proceeding *pro se* and is not a party to Defendants' motion under consideration. The motion is opposed by Plaintiffs (Doc. 47) who assert that various genuine questions of material fact exist. Also before the Court is Plaintiffs' cross-motion for summary judgment (Doc. 44) against the City, Chief Fanara, and Mayor Moreau, which was opposed by those same Defendants (Doc. 49). Briefly, the facts pleaded allege that from about April until his arrest in Georgia in November 2005 and ultimate imprisonment,[1] Armstead, at relevant times a police officer with the City of Bunkie Police Department, had an illegal relationship (which at some point became sexual) with Plaintiffs' fourteen year-old daughter. On July 26, 2006 Plaintiffs—the girl's parents suing on her behalf—brought claims under 42 U.S.C. § 1983 as well as Louisiana

---

[1] Armstead, an Air Force reservist, last worked for the City on November 24, 2005. He was arrested on Robins Air Force Base in Georgia after having reported for duty when the Plaintiffs' daughter, who had accompanied him to the base, attempted to leave the base and return under a false identity, arousing the suspicion of military police. His employment with the City was terminated by Chief Mary Fanara on December 5, 2005 upon the City Council's approval.

state law claims of vicarious liability against the City, the police chief, and the mayor, and a claim of negligent hiring against Chief Fanara. Armstead is a named defendant but is not addressed in either of the motions for summary judgment presently before the Court.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986)). All inferences are to be drawn in the light most favorable to the nonmovant. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. *Brock v. Chevron U.S.A., Inc.*, 976 F.2d 969, 970 (5th Cir. 1992).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 43)

### A. Prescription of Plaintiffs' Claims

The movants urge that any actionable conduct under § 1983 between Armstead

2

and Plaintiffs' daughter that occurred more than one year before Plaintiffs filed suit is prescribed by Louisiana's one-year delictual statute of limitations. They are correct. *See Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007). "In § 1983 claims, the applicable statute of limitations is that which the state would apply in an analogous action in its courts. In accordance with applicable Louisiana law, we apply a one-year liberative prescriptive period to these claims." *Id.* (citation omitted) (quoting La. Civ. Code art. 3492, the same prescriptive statute at issue in the present case). Plaintiffs contend that the relationship constituted "a continuing ongoing violation and tort." The exception to statutory prescription for a continuing tort is inapplicable here. Louisiana courts have noted that when tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated. *Bustamento v. Tucker*, 607 So.2d 532, 538–39 (La. 1992). In the present case, however, each instance of Armstead's tortious contacts or acts with the Plaintiffs' daughter, if proven, would constitute a separate tort with a separate prescriptive period. *See id.* at 539 n.8 ("When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods. Prescription is completed as to each injury, and the corresponding action is barred, upon the passage of one year from the day the owner acquired, or should have acquired, knowledge of the damage."). Plaintiffs filed suit on July 26, 2006. Consequently, any state vicarious liability or federal § 1983 claims for Armstead's acts occurring one year before that date are prescribed under Louisiana Civil Code article 3492. Summary judgment for Defendants would be granted on this ground. Even if not prescribed, however, these claims against the

3

moving Defendants would also be dismissed on the merits for the reasons which follow.

## B. Plaintiffs' Section 1983 Claims

"To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen'l Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005) (citations omitted). Defendants assert that there can be no constitutional injury where there are no allegations of non-consensual sexual activity between Armstead and Plaintiffs' minor daughter, attempting to distinguish consent-at-law in a criminal prosecution context from consent-in-fact in the present, § 1983, context. Defendants cite no authority for why this Court should make such a distinction in this case and Plaintiffs correctly point out the argument's preposterousness. Summary judgment is inappropriate, and as subsequent analysis bears out, unnecessary, on this ground.

Defendants also argue that Armstead did not act, or at least they say there is no evidence that Armstead acted, under color of state law in pursuing his relationship with the Plaintiffs' daughter. We need not decide these preliminary issues. Assuming (for the purposes of the parties to this motion only) that there is a constitutional injury caused by a state actor sufficient to trigger § 1983 liability, we determine that the Defendants (i.e., the City, *see infra*) are not liable for this state actor's injury to the Plaintiffs. The Fifth Circuit recites what it refers to as "the rote" for establishing municipal liability under Supreme Court precedent:

> Section 1983 offers no *respondeat superior* liability. Municipalities face § 1983 liability "when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ."

*Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (footnotes omitted) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Put another way, the Fifth Circuit requires three elements to prove a municipality's liability: "(1) a decision by a decisionmaker that amounts to a policy under *Monell* and its progeny; (2) a decision so deliberately indifferent to the rights of the citizens that the [municipality] fairly can be said to be culpable for the injury; and (3) sufficient causation between the specific policy decision and the resulting constitutional injury." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). Defendants argue there is an absence of municipal policy or custom sufficient to hold the City liable under § 1983. Where, as here, there is no explicit or "smoking gun" City policy or procedure encouraging misbehavior such as Armstead's, the courts permit another type of proof of a policy:

> A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy [may be a basis for municipal liability]. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Id.* (footnote omitted) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

We find that there is no evidence in this case of a Bunkie City or Police Department policy or procedure allowing, fostering, or condoning Armstead's acts. Plaintiffs argue that, in the absence of a procedure or policy, the City is liable under

5

§ 1983 because Chief Fanara's thorough inquiry into Armstead's behavior was deficient when measured against an expert witness's understanding of "best practices." Their argument is that the Chief did not write down all aspects of her investigation. Likewise, there is no evidence to support the Plaintiffs' claim that Chief Fanara failed to investigate even *one* allegation against Armstead. Rather, the evidence shows that both Armstead and the Plaintiffs' daughter consistently denied any relationship at all. Still, Chief Fanara investigated the matter personally, despite not finding any hard evidence of Armstead's misbehavior. Specifically, on the first occasion rumors of an improper relationship were brought to her attention, September 9, 2005, she called Armstead from duty to the station and, unannounced, drove him to his home to investigate a call that the Plaintiffs' daughter was there; upon receiving similar, unsubstantiated, allegations two days later she warned Armstead orally and in writing in his personnel record to choose between his "friendship"—according to Armstead's deceitful characterization of the relationship with the Plaintiffs' daughter—and his job; on November 11, 2005, after another potential incident reached her, she drove to Marksville, Louisiana to view a casino's security footage seeking to corroborate or debunk Armstead's story that he had been there on a recent occasion with his daughter, and not Plaintiffs' daughter; she also personally telephoned a store clerk to verify a similar, unfounded, claim; on yet another occasion, she accompanied Armstead to the Plaintiffs' home, where he appeared to have assuaged the Plantiffs' concerns about their daughter. Finally, Chief Fanara, acting with the City Council, discharged Armstead on December 5, 2005, after he had been taken into federal custody in Georgia. In short, Plaintiffs have produced no evidence of a lack of

investigation on her part. Indeed, her diligence is evident.

As a fallback position, they rest their argument on the Chief's failure to write down all aspects of her investigation. This failure does not amount to a City policy. And, even assuming that this suggested failure did constitute a municipal policy, Plaintiffs would have to produce evidence that an action of the City taken pursuant to that policy or "persistent, widespread practice" permitted Armstead to do what he did to their daughter. They do allege and provide evidence that Armstead caused their daughter's injuries. But they have provided no evidence that Chief Fanara's failure to write down aspects of her otherwise thorough investigation (even if it amounted to deliberate indifference on her part) was a direct causal link or even a cause-in-fact[2] of their daughter's abuse and injury. *See Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (requiring a showing of deliberate indifference as well as "sufficient causation between the specific policy decision and the resulting constitutional injury"). Because the Plaintiffs cannot meet the elements of a § 1983 claim sufficiently to support a finding of liability against the City of Bunkie, summary judgment will be granted dismissing all § 1983 claims against it.

Additionally, because Chief Mary Fanara and Mayor Gerard Moreau were sued only in their official, rather than personal, capacities, the § 1983 claims against them will be dismissed as redundant to the same claims against the City. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations omitted) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which

---

[2] This lack of causality would also defeat any state-law negligence claims on this ground, to the extent the Plaintiffs advance such claims.

an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The dismissal of all claims against Chief Fanara and Mayor Moreau follows, for the same reasons set forth above.

C. **Plaintiffs' State Law Claims**

Defendants also move for summary judgment against Plaintiffs' claims that the City is vicariously liable for Armstead's alleged tortious conduct during the course of his employment. Louisiana codifies the doctrine of *respondeat superior* as follows: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." LA. CIV. CODE ANN. art. 2320 (1997). "Although an employment relationship may in fact exist, the employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of the employment with the former." *Brasseaux v. Town of Mamou*, 752 So.2d 815, 820 (La. 2000). The Louisiana Supreme Court has elaborated:

> In *LeBrane v. Lewis*, 292 So.2d 216 (La.1974), we set forth the requisite considerations for determining whether the tortious conduct of the employee may be properly imputed to the employer. There, we stated that the employer's liability is predicated on whether the tortious conduct of the employee is "so closely connected in time, place, and causation to his employment-related duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests." *Id.* at 218. Because of the unlimited contexts in which the issue may arise, we have stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.

8

*Id.* at 820. The Louisiana Supreme Court has distilled this analysis down to several factors to be weighed: "(1) whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment." *Miller v. Keating*, 349 So.2d 265, 268 (La. 1977) (applying this formulation).

Plaintiffs have presented no evidence permitting us to make a favorable inference that Armstead engaged in something other than "conduct instituted by purely personal considerations entirely extraneous to the employer's interests." *See Brasseaux*, 752 So.2d at 820. They appear to rely on the allegation that Armstead first became acquainted with the Plaintiffs' minor daughter while on duty, in his patrol car, when he gave her his home telephone number after stopping her in front of her home while she was engaged in an act of truancy. "The mere display of the badge and the representation as a police officer, without more, are insufficient to establish employment-rooted conduct." *Brasseaux*, 752 So.2d at 823. There is simply no evidence that Armstead's intentionally felonious actions were carried out in the exercise of his police functions to a sufficient degree to render his actions attributable to the Defendants. For this reason, summary judgment will be granted on Plaintiffs' state law claim of vicarious liability.

Defendants also move for summary judgment on Plaintiffs' claim that Chief Fanara, specifically, was negligent in her official capacity in hiring Armstead. "Governmental employers who negligently either hire, commission, train or retain an

incompetent or unfit deputy may be liable to a third party injured by the employee's negligence." *Roberts v. Benoit*, 605 So.2d 1032, 1044 (La. 1991); *see also* LA. CIV. CODE ANN. art. 2315 (1997) (encompassing tort of negligent hiring). Plaintiffs have presented no evidence that Armstead was in any way incompetent or unfit at the time of his hiring by Chief Fanara. Summary judgment will be granted on the negligent hiring claim.

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. 44)

Plaintiffs filed a cross-motion for summary judgment on the claims advanced in their complaint against the City, Chief Mary Fanara, and Mayor Gerard Moreau.[3] They argue that summary judgment is appropriate on the § 1983 claims as well as state law claims of vicarious liability and negligent hiring. For the reasons discussed, *supra*, because Defendants' motion for summary judgment on these same grounds will be granted, Plaintiffs' cross-motion will be denied.

### CONCLUSION

Because Plaintiffs have not illustrated the existence of facts sufficient to carry their burdens under 42 U.S.C. § 1983 or Louisiana state law as to the moving defendants, those defendants' motion for summary judgment will be granted by separate judgment. Plaintiffs' motion for summary judgment will be denied in the same judgment.

SIGNED on this 14 day of January, 2009, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

[3] Again, no claims against Fred Armstead are advanced in Plaintiffs' motion for summary judgment. Defendants' opposition does not purport to defend Fred Armstead.